**PLANNED PARENTHOOD OF SOUTHEASTERN PENNSYLVANIA; Reproductive Health and Counseling Center; Women's Health Services, Inc.; Women's Suburban Clinic; Allentown Women's Center; and Thomas Allen, M.D., Plaintiffs,**

v.

**Robert P. CASEY; N. Mark Richards; Ernest D. Preate; and Michael D. Marino, Defendants.**

Civ. A. No. 88–3228.

United States District Court, E.D. Pennsylvania.

Nov. 16, 1994.

---

Thomas E. Zemaitis, Pepper, Hamilton & Scheetz, Susan Frietsche, Linda Wharton, Women's Law Project, Philadelphia, PA, for plaintiffs.

Kate L. Mershimer, Deputy Atty. Gen., Harrisburg, PA, for defendant.

## MEMORANDUM

HUYETT, District Judge.

Pursuant to 42 U.S.C. § 1988, Planned Parenthood of Southeastern Pennsylvania and other abortion providers ("Plaintiffs") petition for attorneys' fees and costs associated with services rendered in this Court. For the reasons set forth below the petition is **GRANTED WITH CERTAIN MODIFICATIONS.**

## I. BACKGROUND

This action involves a challenge by Plaintiffs to the constitutionality of certain provisions of Pennsylvania's Abortion Control Act ("Act"), 18 Pa. Cons.Stat. §§ 3201–3220 (1990). This Court enjoined virtually all challenged provisions. *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 744 F.Supp. 1323 (E.D.Pa.1990). Applying the strict scrutiny standard of review, this Court found unconstitutional the provisions relating to informed consent (§§ 3205, 3208), spousal notification (§ 3209), public disclosure of certain reports (§§ 3207(b), 3214(f)), certain reporting requirements (§ 3214(a), (h)), and the definition of medical emergency (§ 3203). The Court found unconstitutional the provision for parental consent for minors (§ 3206) under the undue burden standard of review.

The Commonwealth of Pennsylvania ("Defendants" or "Commonwealth") appealed. Applying the undue burden standard, the Third Circuit Court of Appeals affirmed the unconstitutionality of the spousal notice provision but held the other provisions constitutional. *Planned Parenthood v. Casey*, 947 F.2d 682 (3d Cir.1991).

The Supreme Court affirmed in part and reversed in part the decision of the Third Circuit Court of Appeals. Applying the undue burden standard, the Supreme Court affirmed the unconstitutionality of the spousal notification provision. *Planned Parenthood v. Casey*, —— U.S. ——, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). It also invalidated the reporting requirement for the spousal notice provision (§ 3214(a)(12)). It affirmed the constitutionality of all other challenged sections and remanded the case to the Court of Appeals for proceedings consistent with the opinion, including consideration of severability of the spousal notice provision from the constitutional provisions of the Act.

On remand, the Court of Appeals found the spousal notice provisions severable and remanded the case to the District Court. *Planned Parenthood v. Casey*, 978 F.2d 74 (3d Cir.1992).

The determination of attorneys' fees under 42 U.S.C. § 1988 involves several steps. First, the Court must decide if the petitioner is a prevailing party. If the petitioner is a prevailing party, the Court must then determine a reasonable fee. Second, the reasonable fee is obtained by calculating a lodestar. Third, the lodestar may be reduced if it is unreasonable in light of the "results obtained" or enhanced in cases of "exceptional success." *Hensley v. Eckerhart*, 461 U.S. 424, 433–37, 103 S.Ct. 1933, 1939–41, 76 L.Ed.2d 40 (1983).

Plaintiffs request $526,429.30 in fees and $22,567.34 in costs. Upon thorough review of Plaintiffs' petition for attorneys' fees, the

Commonwealth's response, and Plaintiffs' reply memorandum, the Court awards Plaintiffs $201,735.00 in attorneys' fees and $20,236.33 in costs, for a total of $221,971.33.

## II. *Calculating Attorney's Fees Excluding the Fee Petition*

### A. *Prevailing Party Status*

■ Under 42 U.S.C. § 1988, courts may award reasonable attorneys' fees to prevailing parties. *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937. " 'Plaintiffs may be considered prevailing parties if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Id.* at 433, 103 S.Ct. at 1939 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (1st Cir.1978)). The Supreme Court elaborated upon that definition and stated that a plaintiff must obtain at least some relief on the merits. *Farrar v. Hobby,* ⸺ U.S. ⸺, ⸺, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992); *Hewitt v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 2675–76, 96 L.Ed.2d 654 (1987). There must be a resolution of the dispute which changes the legal relationship between the parties. *Hewitt,* 482 U.S. at 760–61, 107 S.Ct. at 2675–76; *Rhodes v. Stewart,* 488 U.S. 1, 3–4, 109 S.Ct. 202, 203–04, 102 L.Ed.2d 1 (1988). This change occurs when a plaintiff obtains a judgment, consent decree, or settlement against the defendant. *Farrar,* ⸺ U.S. at ⸺, 113 S.Ct. at 574. It may also occur if the lawsuit is a catalyst that produces "voluntary action by the defendant that affords the plaintiff all or some of the relief he sought through a judgment—e.g., a monetary settlement or a change in conduct that redresses the plaintiff's grievances." *Hewitt,* 482 U.S. at 760–61, 107 S.Ct. at 2676; *Baumgartner v. Harrisburg Hous. Auth.,* 21 F.3d 541, 544 (3d Cir.1994).

Plaintiffs assert that they succeeded on four issues: the constitutionality of the spousal notice provision (§ 3209), the reporting requirement of section 3214(a)(12), the scope of the definition of medical emergency (§ 3203), and the reaffirmation of the essential aspects of *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Application Interim Attorneys' Fees at 4. Plaintiffs are prevailing parties with respect to §§ 3209 and 3214(a)(12), and Defendants do not challenge their status on these issues. Although Plaintiffs must prevail on only one claim to obtain prevailing party status, the Court considers Plaintiffs' status on the other claims because it is relevant to determining the reduction to Plaintiffs' request because of limited success.

To be a prevailing party, the plaintiff must " 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). In other words, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* ⸺ U.S. ⸺, ⸺, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). "[A] favorable judicial statement of law in the course of litigation that results in judgment against the plaintiff does not suffice to render [the plaintiff] a prevailing party." *Hewitt v. Helms,* 482 U.S. 755, 763, 107 S.Ct. 2672, 2677, 96 L.Ed.2d 654 (1987).

■ In this Court, Plaintiffs challenged the Act's definition of "medical emergency" as unduly narrow and vague. Plaintiffs claimed it did not include three life-threatening conditions: preeclampsia, inevitable abortion, and prematurely ruptured membranes. The Court granted an injunction to prevent the application of the narrow definition. The Court of Appeals read the statutory definition more broadly and reversed this Court, finding that the definition encompassed the three medical conditions Plaintiffs addressed.

Plaintiffs claim prevailing party status on this issue, arguing that the Court of Appeals' broad construction clarified the definition of medical emergency in a manner favorable to Plaintiffs. Corrected Mem.Law Supp.Pl.–Appellees' Application for Attorneys' Fees [hereinafter "Pls.' Corrected Application"] at

12.[1] Plaintiffs also argue that they directly benefitted from the Court of Appeals' holding because the broad definition prevents prosecutions by Defendants when abortions are performed because of preeclampsia, inevitable abortion, or prematurely ruptured membranes. *Id.* at 11–12.

Plaintiffs misinterpret the judicial effect of the Court of Appeals decision. The Court found Plaintiffs' narrow interpretation "unduly restrictive." *Casey,* 947 F.2d at 701. The Court of Appeals did not grant Plaintiffs relief on the merits of this claim. Rather, it accepted Defendants' interpretation of the definition. Just because the court offered a favorable judicial statement of law, Plaintiffs are not prevailing parties on this issue.

▮ Plaintiffs also claim prevailing party status because the Supreme Court affirmed the essential holding of *Roe.* Plaintiffs assert that the validity of *Roe* "became a 'significant issue'" in the proceeding, and that therefore, the affirmance of the essential holding of *Roe* was a benefit to Plaintiffs and the public as a whole. Pls.' Corrected Application at 8.

This argument is misplaced. At issue in this case was the constitutionality of certain provisions of Pennsylvania's Abortion Control Act. *Casey,* —— U.S. at ——, 112 S.Ct. at 2803. Although the validity of *Roe* was an important legal issue, the Supreme Court's affirmation of *Roe* cannot be said to have given Plaintiffs an enforceable judgment against the defendant for whom fees are sought. *See Farrar,* —— U.S. at ——, 113 S.Ct. at 573. Plaintiffs did not seek an affirmation of *Roe* in their complaint. As a result, the Court finds that while Plaintiffs prevailed on this issue, this issue was not a claim on which they could be called "prevailing parties." Plaintiffs are only prevailing parties with respect to the unconstitutionality of the spousal notice provision (§ 3209) and the spousal notification reporting requirement.

## B. Reasonableness of Plaintiffs' Fee Request

After determining that Plaintiffs are prevailing parties, the Court must determine a reasonable fee. The Court first calculates a lodestar figure by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939.

▮ The party seeking fees bears the burden of proving that the fee request is reasonable by submitting evidence to support the hours worked and the rates charged. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939; *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990). The opposing party has the burden to challenge the reasonableness of the fee requested with specificity sufficient to give the fee applicant notice. *Id.; Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 715 (3d Cir.1989). Once objections are raised, the Court has great discretion to adjust the fee in light of these objections. *Rode,* 892 F.2d at 1183; *Bell,* 884 F.2d at 721.

Plaintiffs seek compensation for the services of the Center for Reproductive Law and Policy ("CRLP"), the Women's Law Project ("WLP"), Pepper, Hamilton & Scheetz ("PHS"), Professor Seth Kreimer ("Kreimer"), and the Planned Parenthood Federation of America ("PPFA") in the district court and preparing the fee application. In support of the application, Plaintiffs have submitted contemporaneous time records kept by each attorney, for a total of 3,574.50 hours. Application for Interim Attorneys Fees at 5. Plaintiffs claim 3,514.00 hours for services their lawyers rendered before this Court and 60.50 hours to prepare the present fee petition.[2] The Court calculates the lode-

---

1. Plaintiffs incorporate by reference the arguments in their memorandum seeking fees for the Supreme Court appeal and subsequent remand to the Third Circuit Court of Appeals.

2. Plaintiffs request compensation for the following hours:

| Organization/ Attorney | | Total Hours Requested | Fee Petition | Litigation Hours |
|---|---|---|---|---|
| CRLP | K. Kolbert | 292.50 | 6.00 | 286.50 |
| | E. Goetz | 41.75 | 0 | 41.75 |

star separately for the hours spent on the fee petition.

### 1. *Reasonable Hours*

■ The first step in calculating a reasonable fee is to determine the number of hours reasonably expended on the litigation. Excessive, redundant, or otherwise unnecessary hours are not "reasonably expended" and should be excluded. *Hensley*, 461 U.S. at 434; *Rode*, 892 F.2d at 1183.

Defendants raise two types of challenges to Plaintiffs' requested hours. It argues that some hours are improperly charged to the Commonwealth and others are duplicative, excessive, and otherwise unnecessary. The Court addresses these challenges in turn.

Defendants challenge four types of charges as improperly charged to the Commonwealth. Defendants argue that hours spent on the fee petition, researching the admissibility of newspaper articles, "warning labels" research, and travel related to researching proposed legislation are improper charges. Plaintiffs have agreed to withdraw their claims with respect to the 33.75 hours Maria M. Pabon billed for on warning labels research and the 10.25 hours Thomas Zemaitis spent on travel related to proposed legislation and the Court deducts these hours accordingly. In addition, the Court deducts 2 hours from the time records of Jodi Marcus spent on warning labels research, for a total reduction of 46 hours.

■ Defendants' other objections to improper entries must be rejected. Defendants argue that time spent preparing the fee petition and the time spent researching the admissibility of newspaper articles are not admissible. Defs.' Br. at 12–13. Newspaper articles are only hearsay if offered in evidence to prove the truth of the matter asserted. Fed.R.Evid. 801(c). Accordingly, the time spent researching this issue is compensable.

■ Defendants also argue that the hours devoted to the fee petition are not compensable. On the contrary, the hours devoted to preparing and litigating the fee petition are compensable and are subject to the *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), fee reduction analysis. *Institutionalized Juveniles v. Secretary of the Public Welfare*, 758 F.2d 897, 924–25 (3d Cir.1985). Accordingly, the hours spent on the fee petition are compensable.

Next, Defendants attack various hours as duplicative, excessive, and otherwise unnecessary. The Court finds persuasive the reasoning in *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983), which states that in cases with a number of collaborating lawyers, the district court assesses claims of overstaffing and overresearching in light of the "scope and complexity of the particular litigation."

| Organization/ Attorney | | Total Hours Requested | Fee Petition | Litigation Hours |
|---|---|---|---|---|
| WLP | L. Wharton | 142.00 | 4.50 | 137.50 |
| | S. Nicholas | 31.75 | 0 | 31.75 |
| | S. Frietsche | 5.00 | 5.00 | 0 |
| PHS | K. Burns–Gibson | 22.25 | 0 | 22.25 |
| | S. Cipolla | 777.75 | 0 | 777.75 |
| | A. Fletman | 21.25 | 0 | 21.25 |
| | S. Harrison | 328.00 | 0 | 328.00 |
| | G. Kanter | 86.00 | 0 | 86.00 |
| | J. Marcus | 759.00 | 0 | 759.00 |
| | M. Pabon | 33.75 | 0 | 33.75 |
| | S. Phillips | 185.50 | 0 | 185.50 |
| | A. Siden | 27.50 | 0 | 27.50 |
| | D. Vick | 23.25 | 0 | 23.25 |
| | E. Volmer | 80.00 | 0 | 80.00 |
| | T. Zemaitis | 569.25 | 0 | 569.25 |
| | R. Roth | 4.75 | 4.75 | 0 |
| | B. Sicalides | 37.75 | 37.75 | 0 |
| S. Kreimer | | 29.75 | 0.50 | 29.25 |
| PPFA | R. Evans | 38.75 | 2.00 | 36.75 |
| | D. Klassel | 37.00 | 0 | 37.00 |
| | **TOTALS** | **3,574.50** | **60.50** | **3,514.00** |

Based on Plaintiffs' submissions, Defendants attempted to calculate how many hours Plaintiffs spent on tasks such as discovery, strategy conferences, and trial preparation. Defendants argue that the total charges for these tasks were excessive and that various individual charges were excessive and that the total hours should be reduced by 30%.

For example, Defendants calculated that Plaintiffs' attorneys spent 1,134 hours on pre-trial submissions, trial preparation and trial, and post-trial briefs. Defendants challenge these hours as excessive, in light of the fact that trial counsel were Zemaitis and Kathyrn Kolbert, two experienced litigation attorneys. Considering that one quarter of these hours were spent on the trial and oral argument itself, and the case contained several complex factual and legal issues, the Court finds that these hours were not excessive.

Defendants also challenge the 30 hours Kolbert, Ellen Goetz, and Marcus billed to attend a Pennsylvania Coalition Against Domestic Violence meeting. Careful inspection of the fee petition shows that the attorneys attended the meeting to find potential witnesses. These hours are reasonable and are not reduced. Defendants further challenge the number of attorneys attending oral argument. In light of the scope and complexity of the case, it was reasonable for Plaintiffs to bring more than two attorneys to oral argument and the fees requested are not unreasonable.

The Court has carefully reviewed all of Defendants' objections, and the time entries of each attorney, law clerk, and paralegal. The Court also considered the fact that the issues in this case were more complex than a standard contract or personal injury case. In addition, the hours spent on matters before this Court extended over two years and it was reasonable for many attorneys to work on this case. The Court finds that the remaining hours are not excessive, duplicative, or otherwise unnecessary.

### 2. Reasonable Hourly Rates

Plaintiffs propose hourly rates between $60 for a law clerk and $250 for Roger K. Evans.[3] To determine a reasonable hourly rate, market rates in the relevant community should be considered. *Blum v. Stenson,* 465 U.S. 886, 895 (1984); *Gulfstream III Assocs. v. Gulfstream Aerospace Corp.,* 995 F.2d 414, 422 (3d Cir.1993). Plaintiffs offer as evidence of reasonableness Philadelphia's Community Legal Services, Inc. Fee Schedule ("CLS Fee Schedule"), which has been cited with approval by the Third Circuit Task Force on Court Awarded Attorney Fees, *Report of the Third Circuit Task Force on Court Awarded Attorney Fees,* 108 F.R.D. 237, 260 n. 70 (1985), and in the Eastern District of Pennsylvania, *Rainey v. Philadelphia Hous. Auth.,* 832 F.Supp. 127, 129 (E.D.Pa.1993). Defendants do not challenge these rates. Comparing Plaintiffs' proposed rates to those in the CLS Fee Schedule, the Court finds they fall within the range of rates of attorneys of similar skill and experience in Philadelphia. While Plaintiffs seek a $125 per hour for attorney Goetz, a rate that is $5.00 higher per hour than the CLS Fee

**3.** Plaintiffs seek a range of rates for some attorneys because their experience increased over the years of this litigation. Specifically Plaintiffs request the following rates:

| Attorney | Hourly Rate | Attorney | Hourly Rate |
|---|---|---|---|
| K. Kolbert | $230 | E. Goetz | $125 |
| L. Wharton | $175 | S. Nicholas | $200 |
| S. Frietsche | $95 | K. Burns–Gibson | $60 |
| S. Cipolla | $95–155 | A. Fletman | $120 |
| S. Harrison | $95 | G. Kanter | $70 |
| J. Marcus | $60–120 | M. Pabon | $95 |
| S. Phillips | $70 | A. Siden | $70 |
| D. Vick | $125–140 | E. Volmer | $70 |
| T. Zemaitis | $180–230 | R. Roth | $65 |
| B. Sicalides | $135 | S. Kreimer | $200 |
| R. Evans | $250 | D. Klassel | $200 |

Schedule, the Court finds that $125 per hour is reasonable in light of her experience and considering that the remainder of the rates are within the ranges the CLS Fee Schedule suggests.

Thus, multiplying the reasonable hourly rates by the reasonable number of hours, yields a lodestar of $487,042.50 for services rendered for this Court.[4]

## III. *Adjustments to the Lodestar*

### A. *Reduction For Limited Success*

■ After calculating the reasonable lodestar, the Court has discretion to make certain adjustments to the lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). The first adjustment is to consider whether the lodestar should be adjusted downward because it is not reasonable in light of the results obtained. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990). The second adjustment is to determine whether an upward adjustment of the fee is appropriate, whether it be based on delay in payment, extraordinary quality in representation, or a contingency multiplier. *Id.* at 1184.

■ Because Plaintiffs failed to prevail on all of their claims for relief, the Court first determines whether the claims on which Plaintiffs failed were unrelated to the claims on which they succeeded. Next the Court determines whether Plaintiffs achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40.

Consideration of "results obtained" involves two issues. "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40. *See also Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106, 114 (3d Cir.1993) (applying *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40).

With respect to the first issue, *Hensley* explains that related claims involve a "common core of facts" or related legal theories. 461 U.S. at 435, 103 S.Ct. at 1940. In these situations, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* Distinctly different claims are based on different facts and legal theories and should be treated

**4.** The lodestar is calculated as follows:

| Organization/ Attorney | | Hourly Rate | Reasonable Hours | Lodestar |
|---|---|---|---|---|
| CRLP | K. Kolbert | $230 | 286.50 | $65,895.00 |
| | E. Goetz | $125 | 41.75 | $5,218.75 |
| WLP | L. Wharton | $175 | 137.50 | $24,062.50 |
| | S. Nicholas | $200 | 31.75 | $6,350.00 |
| PHS | K. Burns–Gibson | $60 | 22.25 | $1,335.00 |
| | S. Cipolla | $95–155 | 777.75 | $108,580.00 |
| | A. Fletman | $120 | 21.25 | $2,550.00 |
| | S. Harrison | $95 | 328.00 | $31,160.00 |
| | G. Kanter | $70 | 86.00 | $6,020.00 |
| | J. Marcus | $60–120 | 757.00 | $74,626.25 |
| | M. Pabon | $95 | 0 | $0 |
| | S. Phillips | $70 | 185.50 | $12,985.00 |
| | A. Siden | $70 | 27.50 | $1,925.00 |
| | D. Vick | $125–140 | 23.25 | $2,962.50 |
| | E. Volmer | $70 | 80.00 | $5,600.00 |
| | T. Zemaitis | $180–230 | 559.00 | $119,022.50 |
| S. Kreimer | | $200 | 29.25 | $5,850.00 |
| PPFA | R. Evans | $ 250 * | 36.75 | $7,500.00 |
| | D. Klassel | $200 * | 37.00 | $5,400.00 |
| | **TOTALS** | | **3,468.00** | **$487,042.50** |

\* Attorneys billed at one half their normal rate during travel time. Roger K. Evans seeks 13.50 hours travel time at $125.00 per hour. Dara Klassel seeks 20 hours at $100.00 per hour.

as if they were raised in separate lawsuits. *Id.* at 434–35, 103 S.Ct. at 1939–40. In cases where the plaintiffs achieve only limited success, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success." *Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941.

Plaintiffs challenged various provisions of the Act as violative of the Due Process Clause of the Fourteenth Amendment: (1) the definition of medical emergency (§ 3203), (2) informed consent (§§ 3205, 3208), (3) parental consent (§ 3206), (4) spousal notification (§ 3209), (5) public disclosure provisions (§§ 3207(b), 3214(f)), and (6) certain reporting provisions (§ 3214(a), (h)). While some of the issues are factually distinguishable, they involve similar legal theories, and thus are related. As a result, the action should not be viewed as a series of discrete claims. The hours spent pursuing the unsuccessful claims should not be excluded because they are related to the successful claims.

Plaintiffs argue that they succeeded on the spousal notice provision, the definition of medical emergency, and the essential holding of *Roe v. Wade.* As explained previously, Plaintiffs are prevailing parties only on the spousal notice claim and reporting provision. Although Plaintiffs prevailed on the issue of the validity of *Roe v. Wade*, this issue cannot be considered a claim as discussed previously. While Plaintiffs failed on the remainder of their challenges to the statute, these challenges were related to the successful claims. Each claim challenged the same statute and all claims raised the claim of violation of the Fourteenth Amendment. As a result, the hours spent on the challenges to the definition of medical emergency and other provisions of the statute are not subtracted from the lodestar fee because they are related to the spousal notice provision.

The second issue to be considered for "results obtained" is the relationship between the hours reasonably expended and the degree of success achieved in prevailing claims. Plaintiffs obtained an injunction on the spousal notice provision and the reporting requirement for the spousal notice provision, as well as the validity of *Roe.*

Acknowledging their limited success, Plaintiffs propose a 30% reduction of the lodestar. Defendants propose a more drastic 90% cut. In calculating an appropriate percentage reduction, the Court has carefully reviewed the time records submitted by each attorney, law clerk, and paralegal. Additionally, the Court considers the fact that much of the legal services rendered and arguments made would have been necessary even if the spousal notice provision were the only claim litigated. For example, Plaintiffs would have addressed the standard of review for constitutional challenges to abortion regulations, stare decisis, and deference to the District Court's findings even though they challenged only the husband notice provision.

Considering all factors, this Court finds that 60% is an appropriate reduction for limited success to each attorney's claim. The adjusted lodestar is $194,817.00.[5]

5. The adjusted loadstar is calculated as follows:

| Organization/ Attorney | | Lodestar | Adjusted Lodestar |
|---|---|---|---|
| CRLP | K. Kolbert | $65,895.00 | $26,358.00 |
| | E. Goetz | $5,218.75 | $2,087.50 |
| WLP | L. Wharton | $24,062.50 | $9,625.00 |
| | S. Nicholas | $6,350.00 | $2,540.00 |
| PHS | K. Burns–Gibson | $1,335.00 | $534.00 |
| | S. Cipolla | $108,580.00 | $43,432.00 |
| | A. Fletman | $2,550.00 | $1,020.00 |
| | S. Harrison | $31,160.00 | $12,464.00 |
| | G. Kanter | $6,020.00 | $2,408.00 |
| | J. Marcus | $74,626.25 | $29,850.50 |
| | M. Pabon | $0 | $0 |
| | S. Phillips | $12,985.00 | $5,194.00 |
| | A. Siden | $1,925.00 | $770.00 |
| | D. Vick | $2,962.50 | $1,185.00 |
| | E. Volmer | $5,600.00 | $2,240.00 |
| | T. Zemaitis | $119,022.50 | $47,609.00 |

### B. *Positive Multiplier for Quality of Representation*

██ Plaintiffs request a 50% upward adjustment of the lodestar to account for the extraordinary performance of counsel. Ordinarily, the lodestar is presumed to be reasonable compensation. *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 564, 565 (1986). However, in exceptional cases, a quality enhancement is justified if the fee applicant offers evidence that "the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" *Blum v. Stenson,* 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1983). *See also Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940; *Rode v. Dellarciprete,* 892 F.2d 1177, 1184 (3d Cir.1990).

██ Plaintiffs were represented by superior counsel, and *Casey* was one of the more visible and closely-watched court cases in recent history. However, this does not defeat the fact that Plaintiffs prevailed on only one legal claim. Additionally, over the course of these proceedings, five attorneys billed at a rate of $200 or more per hour. In light of these rates and the experience level they reflect, the quality of representation does not exceed expectations. Accordingly, no multiplier will be awarded for extraordinary performance of counsel.

### IV. *Time Spent on Fee Petition*

Plaintiffs request compensation for 60.50 hours Plaintiffs' attorneys spent on preparing the fee petition.[6] Time spent preparing the fee petition is compensable. *See, e.g., Student Pub. Interest Research Group of New Jersey v. AT & T Bell Lab.,* 842 F.2d 1436, 1453 (3d Cir.1988). The Court "treat[s] the fee petition litigation, as a separate entity subject to lodestar and *Hensley* reduction analysis." *Institutionalized Juveniles v. Secretary of Pub. Welfare,* 758 F.2d 897, 924 (3d Cir.1985).

██ Considering that Plaintiffs' hours were reduced by 60% and did not receive the quality multiplier requested, the Court believes a 20% reduction for each person who worked on the fee petition is appropriate.[7] The Court awards Plaintiffs $6,918.00 in attorneys' fees.

### V. *Costs*

██ Plaintiffs request $22,567.34 in costs incurred in the matters before this Court. The request includes duplicating costs, court liaison charges, electronic database research, messenger service, postage, report services, telecopy, word processing, and transportation. Defendants first challenge that the only costs Plaintiffs are entitled to recover are those covered by 28 U.S.C. § 1920.[8]

| Organization/ Attorney | | Lodestar | Adjusted Lodestar |
|---|---|---|---|
| S. Kreimer | | $5,850.00 | $2,340.00 |
| PPFA | R. Evans | $7,500.00 | $3,000.00 |
| | D. Klassel | $5,400.00 | $2,160.00 |
| **TOTALS** | | **$487,042.50** | **$194,817.00** |

6. For a summary of the hours Plaintiffs request with respect to their fee petition, see *supra* note 2.

7. The lodestar with a 20% reduction is calculated as follows:

| Attorney | Reasonable Rate | Hourly Rate | Lodestar | Adjusted Lodestar |
|---|---|---|---|---|
| K. Kolbert | 6.00 | $230.00 | $1,380.00 | $1,104.00 |
| L. Wharton | 4.50 | $175.00 | $787.50 | $630.00 |
| S. Frietsche | 5.00 | $95.00 | $475.00 | $380.00 |
| R. Roth | 4.75 | $65.00 | $308.75 | $247.00 |
| B. Sicalides | 37.75 | $135.00 | $5,096.25 | $4,077.00 |
| S. Kreimer | 0.50 | $200.00 | $100.00 | $80.00 |
| R. Evans | 2.00 | $250.00 | $500.00 | $400.00 |
| **TOTALS** | **60.50** | | **$8,647.50** | **$6,918.00** |

8. Section 1920 provides in pertinent part:

Costs taxable under § 1920 include disbursements for printing, witness fees and filing fees. *Midnight Sessions, Ltd. v. City of Philadelphia,* 755 F.Supp. 652, 663 (E.D.Pa. 1991), *vacated on other grounds,* 945 F.2d 667 (3d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992); *David v. AM Int'l,* 131 F.R.D. 86, 90 (E.D.Pa.1990).

However, in *Rank v. Balshy,* 590 F.Supp. 787 (M.D.Pa.1984), the court stated, "[w]hen a statute shifts the typical burden of attorney fees and costs, the traditional limitations of 28 U.S.C. § 1920 do not necessarily apply, particularly in civil rights cases." *Id.* at 803. *See also Dowdell v. City of Apopka,* 698 F.2d 1181, 1188–89 (11th Cir.1989). In determining the costs permissible, the *Rank* court examined the purpose of 28 U.S.C. § 1988, which is to ensure effective enforcement of civil rights laws by making cases financially feasible to litigate. *Rank,* 590 F.Supp. at 803, *Midnight Sessions,* 755 F.Supp. at 663. The court stated further, "[t]he factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorneys." *Rank,* 590 F.Supp. at 803 (quoting *Dowdell,* 698 F.2d at 1190).

▮ Accordingly, the Court awards costs to Plaintiffs to the extent they were reasonably and necessarily incurred. Defendants also challenge a number of the attorneys' costs as improper. The Court agrees with two of Defendants' objections. Word processing charges are not awarded because they are part of an attorney's overhead costs. Costs for messenger service and telecopy are reduced by 20%. Plaintiffs seek $1,627.25 in messenger costs which is unreasonable, considering that the Court did not require Plaintiffs to send documents overnight. Plaintiffs seek $241.47 for telecopy. This expense is unreasonable, considering that Plaintiffs have not explained what this charge means. As Plaintiffs withdrew their request for costs associated with the warning label research on Lexis and Westlaw, the Court deducts $1,875.62 from costs.

Accordingly, Plaintiffs are awarded $20,236.33 in costs.[9]

## VI. *Conclusion*

For the reasons stated above, the Court awards Plaintiffs $194,817.00 in attorneys' fees for the services provided in this Court, $6,918.00 for time spent preparing the fee petition, and $20,236.33 in costs, for a total of $221,971.33.

▮

---

A judge or clerk of any court of the United States may tax as costs the following:

  (1) Fees of the clerk and marshal;
  (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
  (3) Fees and disbursements for printing and witnesses;
  (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
  (5) Docket fees under section 1923 of this title;
  (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

**9.** The costs awarded are calculated as follows:

| | Costs Requested | Costs Awarded |
|---|---|---|
| Duplicating | $2,218.60 | $2,218.60 |
| Court Liaison | $377.00 | $377.00 |
| Lexis/Westlaw | $11,986.40 | $10,110.78 |
| Messenger | $1,627.25 | $1,301.80 |
| Postage | $173.23 | $173.23 |
| Report Services | $3,587.35 | $3,587.35 |
| Telecopy | $241.47 | $193.18 |
| Word Processing | $81.65 | 0 |
| Transportation | $2,274.39 | $2,274.39 |
| **TOTALS** | **$22,567.34** | **$20,236.33** |