### In re MINOR CHILD

### v.

### LIVINGSTON PARISH SCHOOL BOARD, et al.

### Civil Action No. 06–553–FJP–DLD.

United States District Court, M.D. Louisiana.

Nov. 1, 2006.

Ronald Lawrence Wilson, New Orleans, LA, Emily J. Martin, American Civl Liberties Union Foundation, New York City, for Michelle Selden.

Carey Thompson Jones, Denham Springs, LA, for Randy Pope, Malcolm Sibley, Jeffrey Cox, Louis Carlisle, Milton Hughes, Alton Leggette, Keith Martin, Claire Peak–Coburn, Julius A. Prokop, Alan Joe Murphy.

---

### RULING ON MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS

POLOZOLA, District Judge.

Although this suit was dismissed by the Court at the joint request of the parties, the Court must now determine whether Plaintiff is the prevailing party in this case and entitled to recover attorney's fees under 42 U.S.C. § 1988. This matter is now before the Court on Plaintiff's motion for an award of attorney's fees and costs.[1] The Defendants have filed an opposition to the motion.[2] For the reasons which follow, Plaintiff's motion is DENIED.

### I. Background facts

On August 2, 2006, Plaintiff filed suit seeking a temporary restraining order, preliminary injunction, and a permanent injunction to prevent Defendants from segregating classes at Southside Junior High School and throughout Livingston Parish by sex.[3] Plaintiff claimed the segregation of classes by sex "discriminated against Plaintiff and the proposed Plaintiff class on the basis of sex in violation of Title IX [of the Education Amendments of 1972, 20 U.S.C. §§ 1661–1688]" and "discriminated against Plaintiff and Plaintiff class on the basis of sex in violation of their rights to equal protection of the law, secured by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983." [4] Plaintiff also alleged, by invoking the supplemental jurisdiction of the Court, Defendants violated Article 1, Section 3 of the Louisiana State Constitution by segregating students on the basis of their sex.[5] The Court scheduled a hearing to consider plaintiff's request for a preliminary injunction the following day. However, the Court met with the parties in-chambers for several hours on the day the suit was filed in an attempt to resolve the matter without the necessity of a hearing, and if unsuccessful in its attempt to settle the case, to limit the issues to be presented at the hearing. At approximately 10:30 p.m., the defendants decided that it was in the best interests of the school to abandon its plan for the school year which then made the hearing scheduled for the next day and the entire suit moot.

At the hearing the following day and partially as a result of the in-chambers conference the Court held with the parties the previous day, counsel for Defendants formally advised the Court that the Livingston Parish School Board would not implement its plan to have a sex-segregated curriculum program at any school, including Southside Junior High School, this school year. According to defense counsel, "it was decided by the [Livingston Parish] School Board Representatives that the School Board simply can't risk a disruption of the opening of school this year." [6] The plaintiff did not object and "dismiss[ed] its motion for a temporary restraining order, preliminary injunction, and the complaint

---

1. Rec. Doc. No. 9.

2. Rec. Doc. No. 12.

3. Rec. Doc. No. 1.

4. *Id.*

5. *Id.* Article 1, Section 3 of the Louisiana State Constitution provides "No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime." LSA–Const. Art. 1, § 8.

6. Transcript of Hearing on Motion for Preliminary Injunction, p. 2.

... as [ ] being moot...."[7] Plaintiff's counsel reserved their right to request attorney's fees.[8] The case was dismissed without prejudice as being moot.[9] No injunction or consent judgment was entered by the Court pertaining to the same sex school plan. Thereafter, Plaintiff filed this pending motion for attorney's fees.[10]

## II. Law and Analysis

### A. Availability of Attorney's Fees

Rule 54 of the Federal Rules of Civil Procedure governs the procedure for a party to recover attorney's fees in Federal Court. Under Rule 54, "claims for attorney's fees and related non-taxable expenses shall be made by motion"[11] within 14 days of entry of judgment.[12]

Further, Uniform Local Rule 54.2 establishes the procedure by which issues relating to the recovery of attorney's fees may be resolved in the Middle District. Under Local Rule 54.2, "the party desiring to be awarded such fees shall submit to the court a contemporaneous time report reflecting the date, time involved, and nature of the services performed."[13]

Plaintiff's counsel contend they are entitled to attorney's fees under 42 U.S.C. § 1988, which provides, in relevant part, "[i]n any action or proceeding to enforce a provision of section [ ] ... 1983 ... of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the cost."[14] The Defendants have filed an opposition to Plaintiff's request for attorney's fees and argue that Plaintiff was not a prevailing party under the facts of this case.

### B. Relevant Jurisprudence

The Supreme Court has required that a party must prevail on the merits of a claim before a party may be awarded attorney's fees under Section 1988.[15] Further, for a party to prevail on the merits requires the Court to find a change in the "legal relationship of the parties."[16] However, as the Court noted in *Texas Teachers Association v. Garland Independent School District*, the law does not require a plaintiff "succeed on the 'central issue' in the litigation and achieve the 'primary relief sought' to be eligible for attorney's fees under § 1988."[17] Instead, "[t]he touchstone of

---

7. *Id.* at 3.

8. *Id.* at 6.

9. Rec. Doc. No. 8.

10. Rec. Doc. No. 9.

11. Fed.R.Civ.P. 54(d)(2)(A).

12. Fed.R.Civ.P. 54(d)(2)(B).

13. L.R. 54.2.

14. 42 U.S.C. § 1988(b). The Court must note for the record that when the Court initially reviewed the total fees sought by counsel for plaintiff in a case which did not last 24 hours and did not involve any discovery, motion hearings, final pretrial conference, or a trial,

the Court was somewhat shocked by the amount of the fees.

15. *Hanrahan v. Hampton*, 446 U.S. 754, 758, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980)(*per curiam*).

16. *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987).

17. 489 U.S. 782, 784, 109 S.Ct. 1486, 1489, 103 L.Ed.2d 866 (1989). In *Texas State Teachers Ass'n*, a group of teachers sought relief on a variety of constitutional claims, succeeding on only a few. The Court held that a party does not have to succeed on the central issue to qualify for attorney's fees. Instead, the Court noted "[i]f the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the

the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."[18] This standard allows for the award of attorney's fees after only nominal damages have been awarded.[19]

Under the standard established by the Supreme Court, it is not necessary for a party to fully adjudicate the matter to be considered a "prevailing party." However, as the Supreme Court noted in *Texas Teachers Association*, the essence of being considered a "prevailing party" is a change in the legal relationship of the parties.[20] Therefore, settlement agreements enforced through a consent decree may lead to an award of attorney's fees even if the consent decree does not include an admission of liability by the defendant.[21] As will be discussed later in this opinion, there was no consent decree signed by this Court in this case.

When a party is to be considered a "prevailing party" was further defined by the Supreme Court in *Buckhannon Board and Care Home, Inc., v. West Virginia Department of Health and Human Resources*.[22] In *Buckhannon*, the Supreme Court had to determine who was a "pre-vailing party" under the Fair Housing Amendments Act (FHAA) and the Americans with Disabilities Act (ADA).[23] Specifically, the Court had to determine the validity of the "catalyst theory," under which a plaintiff is considered a "prevailing party" if it achieves its desired result because the lawsuit brings about a voluntary change in the defendant's conduct.[24] Prior to *Buckhannon*, most of the Courts of Appeals applied the "catalyst theory" to determine whether a party was considered a "prevailing party."[25]

In *Buckhannon*, the plaintiffs, assisted living care homes, were ordered by the state to cease and desist operations because they were in violation of several state statutes. The plaintiffs immediately brought suit challenging the statutes as being in violation of the FHAA and the ADA.[26] The state agreed to stay enforcement of the cease and desist order pending the resolution of the case. A few months later, while the case was still pending, the West Virginia Legislature enacted two bills which eliminated the statutes the plaintiffs were allegedly violating and challenging.[27] The District Court then dismissed the suit as moot at the request of

parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." *Id.* at 792, citing *Nadeau v. Helgemoe*, 581 F.2d 275, 278–279 (1st Cir. 1978).

**18.** *Id.* at 792–793, 109 S.Ct. at 1494.

**19.** *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). However, as the Court found in *Farrar*, in some circumstances a party who is only awarded nominal damages should not receive attorney's fees. *Id.* at 115–116, 113 S.Ct. at 575.

**20.** 489 U.S. at 792–793, 109 S.Ct. at 1494.

**21.** *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835,

149 L.Ed.2d 855 (2001), citing *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

**22.** *Id.*

**23.** *Id.* Although *Buckhannon* dealt with the FHAA and the ADA, fee shifting provisions have been interpreted consistently and the Court's decision in *Buckhannon* is therefore applicable to the current matter. *See Id.* at 603, n. 4, 121 S.Ct. at 1839, n. 4.

**24.** *Id.* at 601, 121 S.Ct. at 1838.

**25.** *Id.* at 602, 121 S.Ct. at 1839.

**26.** *Id.* at 601, 121 S.Ct. at 1838.

**27.** *Id.*

the state.[28] Considering itself the impetus of the statutory change, Buckhannon requested attorney's fees as a "prevailing party" under the FHAA.[29]

Chief Justice Rehnquist, writing for the majority, initially noted that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees."[30] However, the Court then rejected the "catalyst theory" as falling outside of this standard.[31] The Court held a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change."[32] The Court upheld the Fourth Circuit's rejection of attorney's fees for the plaintiffs and rejected an inquiry into the defendant's subjective motivations in changing its conduct.[33]

Recently, in *Bailey v. Mississippi*, the Fifth Circuit applied the holding of *Buckhannon* to a civil rights suit under 42 U.S.C. § 1983.[34] In *Bailey*, several plaintiffs were convicted of violating Mississippi's Bad Check law without the benefit of counsel.[35] The plaintiffs were taken directly to the justice court and made to sign a waiver of counsel form without explanation.[36] After they were imprisoned, the plaintiffs filed a 42 U.S.C. § 1983 lawsuit challenging the constitutionality of both the Bad Check law and the procedure by which they were imprisoned.[37] Later, the plaintiffs filed for post conviction relief in state court, alleging the same constitutional violations as in their Section 1983 suit.[38] Five months later, the state court ruled for the plaintiffs, finding the procedures employed by the district attorney were unconstitutional.[39] The plaintiffs were then released.[40] The state court did not rule on the constitutionality of the statute.[41] Relying on the state court's ruling, the district attorney altered the procedures for prosecuting violators of the Bad Check law. The district attorney then moved to dismiss the Section 1983 action as moot.[42] The Mississippi Attorney General, charged with defending the constitutionality of the statute under state law, simultaneously moved for summary judgment on the grounds that the law was facially constitutional.[43] The district court granted both motions.[44]

After the suits were dismissed, the plaintiffs moved for attorney's fees under Section 1988, arguing their lawsuit had forced the district attorney to change her procedures in prosecuting violators of Mississippi's Bad Check law. The district

28. *Id.*

29. *Id.*

30. *Id.* at 604, 121 S.Ct. at 1840, citing *Rhodes v. Stewart*, 488 U.S. 1, 3–4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988).

31. *Id.* at 605, 121 S.Ct. at 1840.

32. *Id.*

33. *Id.* at 610, 121 S.Ct. at 1843.

34. 407 F.3d 684 (5th Cir.2005).

35. *Id.* at 685.

36. *Id.*

37. *Id.*

38. *Id.*

39. *Id.*

40. *Id.* at 686.

41. *Id.*

42. *Id.*

43. *Id.*

44. *Id.*

court agreed and awarded the plaintiffs attorney's fees. The district court stated the court "was poised to order relief to Plaintiffs on the basis of the deficiencies identified by the state court."[45]

On appeal, the Fifth Circuit reversed, holding the plaintiffs should not be considered a "prevailing party."[46] The Fifth Circuit rejected as irrelevant the district court's contentions that it would have granted relief if the state court's decision had not resulted in policy changes by the district attorney's office. The Fifth Circuit found the "district court allowed an award where the court itself had effected 'no judicially sanctioned change in the legal relationship of the parties'—a key component of catalyst-based awards—in violation of *Buckhannon*."[47] The dismissal and motion for summary judgment granted by the district court did not qualify as an action taken by the district court "bearing sufficient judicial imprimatur to survive *Buckhannon* and support an award for attorney's fees."[48]

The Court now turns to a discussion of the facts of this case and the application of the legal standards set forth above.

### C. Application

This Court finds the holdings in *Buckhannon* and *Bailey* authoritative and binding under the facts of this case. In the current matter, Plaintiff's lawsuit which gave rise to Defendants' voluntary change in conduct does not materially alter the legal relationship between the parties and lacks the judicial imprimatur and sanctioned change necessary to consider the Plaintiff a "prevailing party."

Counsel for Defendants notified the parties that the Livingston Parish School Board would not go forward with proposed gender based classes in Livingston Parish.[49] Thereafter, Plaintiff's counsel requested but subsequently withdrew the request for a consent judgment.[50] The Court found a consent judgment unnecessary as the issue was moot. When counsel for plaintiff continued to argue its case, the Court noted in what this Court terms a joking way that counsel should quit when they were ahead since they had won.

Plaintiff's counsel considers the comment that Plaintiff had "won" the case to be dispositive of whether Plaintiff is to be considered a "prevailing party."[51] This is a frivolous argument. Counsel for Plaintiff knows that the Court did not rule on the merits of the case.[52] There was no indication from the Court that it would grant or deny a preliminary injunction in this case.[53] Plaintiff's counsel also considers the Court's warning that the Defendant would face "very severe sanctions" if Defendant implemented the plan after telling the Court it had withdrawn the plan as creating a material alteration in the parties' legal relationship. This argument is

45. *Id.*

46. *Id.* at 690.

47. *Id.* at 690.

48. *Id.*

49. Transcript of Hearing on Motion for Preliminary Injunction, p. 3.

50. *Id.* at 4.

51. Memorandum in Support of Plaintiff's Motion for an award of Attorney's Fees and Costs, Rec. Doc. No. 10.

52. Indeed, the Department of Education was almost finished with its revision of regulations which may have approved the plan the defendants were implementing.

53. There was a discussion as to whether the opening of school was going to be delayed because the plaintiff waited so late to file this suit.

also frivolous and does not accurately reflect what was stated on the record.[54] Further, as the *Transcript of Hearing on Motion for Preliminary Injunction* indicates, this Court explicitly rejected a consent judgment or any other judicial decree altering the relationship of the parties, the two examples of "material alterations" of the legal relationships cited by *Buckhannon*.[55] Plaintiff's statement to the contrary is a clear misrepresentation of the record solely to gain a financial windfall when the Plaintiff is clearly not entitled to an attorney's fee in this case. The Court must emphasize that its warning to the Defendant was not based on the facts in dispute, but upon Rule 11 of the Rules of Civil Procedure. Therefore, the warning did not alter the legal relationship between the parties, which is a necessary requirement to find prevailing party status. There was no "judicially sanctioned change in the legal relationship of the parties" as is necessary under *Buckhannon*[56] under the facts of this case.

As the Supreme Court has recognized, when a party reaches its " 'sought-after destination' without obtaining judicial relief," the party is not considered a "prevailing party." [57] Plaintiff's counsel cites numerous cases standing for the proposition that *Buckhannon* encompasses the situation before this Court based on holdings by several district and circuit courts.[58] However, these cases are easily distinguishable because in each of the cases cited by Plaintiff, the district court's action in the cited cases far surpassed this Court's action in the current matter.[59]

A voluntary action by Defendants to forego their plan to have gender based classes does not constitute the material alteration of the legal relationship between the parties and certainly lacks the judicial imprimatur necessary to render "prevailing party" status to trigger an award under Section 1988. The Supreme Court emphasized in *Buckhannon* that a defendant's voluntary change in conduct "lacks the necessary judicial imprimatur on the change" to consider the plaintiff a prevailing party under Section 1988.[60] Further, the term 'prevailing party' does not "authorize[ ] federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after

---

**54.** Plaintiffs' Reply Memorandum to Defendants' Memorandum in Opposition to Plaintiffs' Motion For and Award of Attorneys' Fees, Rec. Doc. No. 16, p. 6.

**55.** Transcript of Hearing on Motion for Preliminary Injunction, p. 4.

**56.** 532 U.S. at 605, 121 S.Ct. at 1841.

**57.** *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. at 605, 121 S.Ct. at 1841 (quoting Justice Ginsburg, dissenting, *Id.* at 623, 121 S.Ct. at 1850).

**58.** Plaintiffs' Reply Memorandum to Defendants' Memorandum in Opposition to Plaintiffs' Motion for and Award of Attorneys' Fees. Rec. Doc. No. 16.

**59.** For example, in *American Disability Association, Inc. v. Chmielarz*, the district court explicitly retained jurisdiction over the subject matter. 289 F.3d 1315, 1320 (11th Cir. 2002). This was also the case in *Roberson v. Giuliani*, also cited by Plaintiff. 346 F.3d 75 (2nd Cir.2003). There the district court retained jurisdiction over a private settlement agreement. *Id.* In *Habich v. City of Dearborn*, the district court did not issue a formal order, but commanded the city to act. 331 F.3d 524, 534–535 (6th Cir.2003). In *Habich*, the district court explicitly instructed the City to take an action. The Sixth Circuit found the City's subsequent action pursuant to this instruction was "done with the necessary judicial imprimatur" to convey prevailing party status to the plaintiff. *Id.* at 535.

**60.** 532 U.S. at 601, 121 S.Ct. at 1838.

destination' without obtaining any judicial relief." [61]  Pursuant to the Supreme Court's holding in *Buckhannon*, this Court cannot and will not consider the subjective motivations of the Defendants in their decision to withdraw their plan and will not endorse an interpretation of the fee shifting statute that would "spawn[ ] a second litigation of significant dimension." [62]

As the Fifth Circuit noted in *Bailey*, a district court cannot grant attorney's fees to a plaintiff when the district court may have granted relief to the plaintiffs but could not because the issue was moot.[63]  In the instant case, the Court did not rule on the merits of the suit before Defendants voluntarily withdrew the program which rendered the suit moot.  Therefore, this Court finds Plaintiff is not a "prevailing party" under Section 1988 and Plaintiff's counsel are not entitled to recover attorney's fees under the facts of this case.[64]

### III.   Conclusion

For the reasons set forth above, Plaintiff's motion for an award of attorney's fees and costs is DENIED.

---

**61.** *Id.* at 606, 121 S.Ct. at 1841.

**62.** *Id.* at 609, 121 S.Ct. at 1843.

**63.** 407 F.3d at 689

**64.** While the Court does not have to consider the issue, the Court does have some concern that one of Plaintiff's counsel sought a substantial amount of attorney's fees while also intending to be a main witness to be called by the Plaintiff.